HOLMES, Retired Appellate Judge.
Barbara Hubbard appeals the dismissal of her claims against the City of Oxford (city) and the summary judgment entered in favor of the Calhoun County Humane Society (hereinafter referred to as the animal shelter).
Our review of the record reveals the following: On February 14, 1995, the city arrested Hubbard and charged her with cruelty to animals. In connection therewith, the city seized Hubbard’s 14 pomeranian dogs and delivered them to the animal shelter, pending the outcome of the criminal charges.
On May 2, 1995, Hubbard and the city entered into an agreement, whereby the city agreed to drop all criminal charges against Hubbard in exchange for Hubbard’s release of any and all claims against the city arising out of Hubbard’s arrest. Hubbard signed an executed release to this effect.
On May 13, 1995, the executive director of the animal shelter sent Hubbard a letter, advising her that the animal shelter would release her dogs, after she paid $4,656.81— the cost associated with the boarding. It is undisputed that from February 14, 1995, until May 13, 1995, the animal shelter provided the dogs with housing, food, and medical care. The letter also advised Hubbard that if she failed to respond, the dogs would be placed for adoption. The shelter sent this letter certified mail, return receipt requested. Hubbard signed for the letter.
On May 22, 1995, the attorney for the animal shelter sent Hubbard a letter, notifying her that she could pick up only two of the dogs (pursuant to an agreement between the city and Hubbard) and that all expenses would be waived. The letter also advised Hubbard that if she failed to respond within ten days, the dogs would be placed for adoption. The attorney sent the letter certified mail, return receipt requested. Hubbard signed for the letter, but did not respond within the allotted time. The animal shelter placed all the dogs for adoption.
On September 25, 1995, approximately four months later, Hubbard’s attorney sent the animal shelter a letter, inquiring about the dogs. The animal shelter informed the attorney that the dogs had been adopted.
On May 2,1997, Hubbard filed a complaint against the city and the animal shelter. We would note that the complaint is not a paragon of clarity. However, it would appear that the complaint alleges various counts of fraud, misrepresentation, and a breach of contract against the city. As far as the animal shelter is concerned, it would appear *816 that Hubbard seeks damages for the value of the 14 dogs.
On June 4, 1997, the city filed a motion to dismiss, asserting the following: (1) Hubbard failed to comply with §§ 11-47-23 and -192, Ala.Code 1975, which govern tort claims against municipalities and require the claimant to file a timely sworn statement with the clerk within six months of the date of her injury; (2) the city was entitled to governmental immunity; and (3) Hubbard’s claims were barred by the executed release that she signed in favor of the city. A copy of the release was attached to the motion to dismiss.
On June 9, 1997, the trial court dismissed, with prejudice, all claims against the city.
On November 20, 1997, the animal shelter filed a motion for a summary judgment, along with a narrative summary of undisputed facts. The motion was accompanied by the affidavit of Susan Ponder, the treasurer of the animal shelter, as well as other exhibits.
Hubbard filed a response in opposition to the summary judgment motion, relying on the pleadings, as well as her affidavit.
On December 1, 1997, the trial court conducted a hearing and on December 9, 1997, entered a summary judgment in favor of the animal shelter.
Hubbard appeals. This ease is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where there exists no genuine issue of any material fact and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie case showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence to the contrary. Porter, 636 So.2d 682.
The dispositive issues on appeal are whether the trial court erred in granting the city’s motion to dismiss and in entering a summary judgment in favor of the animal shelter.
Hubbard first contends that because the city attached a copy of the release in support of its motion to dismiss, the trial court, therefore, considered matters outside the pleadings. Specifically, Hubbard contends that the trial court should have treated the motion to dismiss as a motion for a summary judgment. We note that the record is silent regarding whether the trial court did, in fact, consider matters outside the pleadings. We further note that Hubbard does not contend that the dismissal of her claims against the city was otherwise improper. Instead, her argument is based solely on procedural error.
We conclude that Hubbard should have filed a motion with the trial court, requesting that the trial court treat the motion to dismiss as a motion for a summary judgment. This would have afforded the trial court with an opportunity to clarify whether it did, in fact, consider matters outside the pleadings. See Lusk v. Woods, 541 So.2d 470 (Ala.1989).
In Woods, the trial court dismissed the plaintiffs’ complaint for failure to state an actionable claim for relief. The plaintiffs filed a motion to set aside the judgment, arguing that the trial court should have treated the motion to dismiss as a motion for a summary judgment because, they claimed, the trial court considered matters outside the pleadings. The trial court, in considering the plaintiffs’ motion, entered a second order, denying the motion to set aside the dismissal. In its order the trial court noted that it did not consider any matters outside the pleadings and that the requirements of Rule 56 did not apply. The plaintiffs appealed. Our supreme court, in affirming the dismissal, noted that there was no indication that the trial court considered any matters outside the pleadings in making its determination to dismiss the plaintiffs’ complaint.
For the first time on appeal, Hubbard requests this court to consider whether the *817 trial court should have treated the city’s motion for dismissal as a motion for a summary judgment. However, we are unable to make such a determination since Hubbard failed to preserve this issue for appellate review. In other words, the record is silent regarding whether the trial court did, in fact, consider matters outside the pleadings.
It is well settled that “issues not raised before the trial court may not be raised for the first time on appeal.” Green v. Taylor, 437 So.2d 1259,1260 (Ala.1983).
Hence, the only issue left for our review is whether the animal shelter was at fault in placing the dogs for adoption. In support of its motion for a summary judgment, the animal shelter produced a copy of the contract that it had with the city. The pertinent portion of the contract states the following:
“B. It is understood by both parties that any animal brought to the [animal shelter] by the City, if not redeemed by its owner within seven (7) days from its arrival, shall become the [animal shelter’s] property and be available for adoption or other disposal in accordance with the [animal shelter’s] normal operating procedures.”
The animal shelter also produced copies of letters that it sent to Hubbard, notifying her that she could pick up the dogs. The letter sent by the animal shelter’s attorney reads as follows:
“Please be advised that I have been retained to represent the ... animal shelter with respect to the disposition of the fourteen Pomeranians previously owned by you and boarded at the animal shelter during the pendency of the animal cruelty charges brought against you by the City of Oxford. Reviewing the bench notes entered by Judge Harwell of the Oxford City Court on May 2, 1995, it is clear that part of your agreement was to limit your possession of the dogs in question to two only.
“In light of your own agreement to limit your possession to two dogs only, the animal shelter is willing to return two of the Pomeranians to you and waive all expenses against you (which approximates $5,000.00 at this time) incurred with respect to all fourteen dogs for boarding, medical expenses, etc. You may pick out the two Pomeranians of your choice who will not be spayed or neutered. The remaining dogs will be adopted out by the shelter to suitable homes. Please select the two Pomera-nians of your choice within 10 days of the date of this letter. Otherwise, we will assume that you do not wish the return of the two dogs and they will also be available for adoption.”
(Emphasis added.)
As noted previously, Hubbard did not respond within the allotted time, and the animal shelter placed all the dogs for adoption.
In opposition to the animal shelter’s properly supported summary judgment motion, Hubbard relies solely on the pleadings, as well as her personal affidavit. After reviewing the evidence, we find that Hubbard fails to articulate any specific claim against the animal shelter. This fact is evidenced by the following pertinent testimony contained in Hubbard’s affidavit:
“In May 1995, after my 14 Pomeranian breed dogs were illegally seized and I was arrested for cruelty to my beloved dogs, I made a verbal agreement with Mayor Leon Smith in the presence of Ms. Joan Eason and Ms. Erma Wilkins that called for (a) the charges to be dismissed against me, (b) my dogs would be released to me in exchange for my releasing the city of Oxford from suit and my agreeing to not have more than two (2) dogs on any city lot if I chose to live in Oxford again. The agreement that he prepared did not say anything about the return of my dogs, but Mr. Allen said that whatever was agreed to in the mayor’s office would be honored. I signed the agreement in front of Special Prosecutor Stanley Allen. We went upstairs and presented the agreement to Judge Ed Harwell. Judge Harwell was told by Prosecutor Trudy Phillips that the city agreed to drop the charges and that I agreed that I would not sue the city, [and] I was to get all 14 of my dogs returned and I agreed not to have more than 2 dogs on any lot if I came to live in Oxford.
*818 “The charges were dropped, but the City failed to return my 14 dogs. I was told by the Director of the animal shelter, Sylvia Thompson, that if she received a call from the mayor, she would release my dogs. I went back to the Mayor of Oxford and begged him to call the animal shelter and he refused. My dogs were ... sold by the [animal shelter].”
In other words, Hubbard’s sole argument is based on the city’s alleged wrongdoing. As such, Hubbard failed to present any substantial evidence that the animal shelter was at fault in placing the dogs for adoption.
Based on the foregoing, the trial court did not err in entering a summary judgment in favor of the animal shelter. Porter. Consequently, the judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975. AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.
MONROE, J., concurs in the result only.